UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
NETRATINGS, INC.,
                                                  :
                        Plaintiff,
                                                  :
            vs.                                        Civil Action No. 06-3356 (PKC)
                                                  :

WHENU.COM, INC.,                                  :

                        Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NETRATINGS, INC.'S REBUTTAL CLAIM CONSTRUCTION BRIEF**

Seth H. Ostrow (SO 9605)
Arianna Frankl (AF 7764)
Karine Louis (KL 6652)
**DREIER LLP**
499 Park Avenue
New York, New York 10022
(212) 328-6100

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................1

POINT I

WHENU'S REPEATED AND UNSUPPORTED
ATTEMPTS TO READ LIMITATIONS FROM THE
SPECIFICATION INTO THE CLAIMS SHOULD BE REJECTED.................................2

SPECIFIC TERMS FROM THE ASSERTED PATENTS ...............................................3

A.  TERMS FROM THE '510 AND '680 PATENTS ...............................................3

    1.  *log of predetermined events* ................................................................3

    2.  *machine operation* ...............................................................................5

    3.  *identify titles of open windows;*
       *reflects a log of titles of worldwide web pages* ....................................6

    4.  *identifies character strings reflecting on-line activity* ...........................8

    5.  *local computer use meter/user meter* ...................................................9

    6.  *stored in memory of said computer machines/stored in an associated user*
       *computer machine/storing said log of predetermined events by*
       *each use meter in an associated user machine* .....................................11

    7.  *database management system* ..............................................................12

    8.  *linked [to]*...........................................................................................13

    9.  *dictionary/dictionary file* ....................................................................13

    10.  *a computer machine* ............................................................................13

    11.  *"means for interpreting the logged machine*
       *operation events by reference to the dictionary file"* ..........................15

B.  TERMS FROM '386 PATENT .........................................................................16

    1.  *resource; resource use data* ................................................................16

    2.  *interaction* ..........................................................................................17

    3.  *resource use data* ...............................................................................18

    4.  *tracking program* ...............................................................................19

    5.  *storing* ................................................................................................19

    6.  *embedded* ............................................................................................20

CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Atmel Corp. v. Information Storage Devices, Inc.*,
    198 F.3d 1374 (Fed. Cir. 1999)..............................................................15, 16

*Callicrate v. Wadsworth Mfg., Inc.*,
    427 F.3d 1361 (Fed. Cir. 2005)..................................................................7

*Conoco, Inc. v. Energy & Environment Intern., L.C.*,
    460 F.3d 1349 (Fed. Cir. 2006)..................................................................8

*Eolas Technologies Incorp. v. Microsoft Corp.*,
    399 F.3d 1325 (Fed. Cir. 2005)..................................................................14

*Free Motion Fitness, Inc. v. Cybex International, Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005)..................................................................5

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000)..................................................................5

*Karlin Technology Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999)..................................................................5

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
    382 F.3d 1354 (Fed. Cir. 2004)..................................................................2, 6

*Personalized Media Communications, LLC v. Int'l Trade Comm'n*,
    161 F.3d 696 (Fed. Cir. 1998)..................................................................15

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005)..................................................................14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)................................................... *passim*

*Playtex Prods., Inc. v. Procter & Gamble Company*,
    400 F.3d 901 (Fed. Cir. 2005)..................................................................6

*StairMaster Sports/Medical Prods. v. Groupe Procycle, Inc.*,
    Case No.97-396 MMS, 1998 WL 290296 (D. Del. May 20, 1998) ...............14, 15

**STATUTES**

35 U.S.C. § 112........................................................................................................5, 13, 15

35 U.S.C. § 132................................................................................................................8

## PRELIMINARY STATEMENT

Plaintiff NetRatings, Inc. ("NetRatings") submits this rebuttal claim construction brief in further support of its construction of terms from the asserted patents[1] and in response to defendant WhenU.com, Inc.'s ("WhenU") Opening Claim Construction Brief ("WhenU Br.").

From a review of WhenU's Opening Brief, WhenU appears to have disregarded entirely the substantial body of law developed by the Federal Circuit regarding claim construction. Indeed, WhenU spends large amounts of paper discussing purported technology and other totally unrelated concepts without so much as even a feigned attempt to tie its proposed constructions to the asserted patents and intrinsic evidence. For example, WhenU makes an argument that the word "title" in one of the Coffey patents must be the text placed in a portion of an HTML Web page. WhenU Br. at 12. WhenU does not even attempt to support this position through the intrinsic evidence, no doubt because it could not find any such support. It is simply not there. Similar examples of WhenU's disregard for the law abound. For instance, WhenU repeatedly "construes" claim terms by simply importing embodiments described in the specification, an error which compounds in other constructions by selecting just one feature of a disclosed embodiment. WhenU also violates the doctrine of claim differentiation by injecting subject matter of dependent claims into independent claims, rendering express claim language or entire claims superfluous. In still further disregard for the legal precedent which governs claim construction, WhenU asks the Court to determine, prematurely and without anything resembling a proper, much less adequate, record of factual or expert evidence, which claim elements are purportedly invalid for being indefinite.

---

[1] The asserted patents are U.S. Patent Nos: 5,675,510 (the "'510 patent"); 6,115,680 (the "'680 patent"); and 6,763,386 (the "'386 patent"). Each asserted patent is annexed as Exhibits A-C to the Joint Appendix of Exhibits being submitted herewith (hereinafter references to the Joint Appendix will follow the form: "JA Ex. __, at __").

WhenU's approach to claim construction has been flatly rejected time and again by the Federal Circuit.

As explained in NetRatings' opening claim construction brief ("NetRatings Br.") and further below, NetRatings' constructions, which are consistent with established legal principles and should be adopted by the Court.

## POINT I

### WHENU'S REPEATED AND UNSUPPORTED ATTEMPTS TO READ LIMITATIONS FROM THE SPECIFICATION INTO THE CLAIMS SHOULD BE REJECTED

One of the fundamental precepts of claim construction and, indeed, patent law, is that it is the claims which delineate the scope of the invention, not the embodiments disclosed in the specification.  As stated in *Lighting World, Inc. v. Birchwood Lighting, Inc.*, "the scope of the claims [are] not limited to particular embodiments depicted in the figures or described in the written specification."  *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1365 (Fed. Cir. 2004).  WhenU, in contravention of the Federal Circuit's instructions, supports its claim constructions by selecting convenient features of embodiments in the specification and declaring these features to be requirements of the claims.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim we should never know where to stop").  WhenU repeatedly refers to the specifications of the asserted patents as mandating or requiring these additional limitations as being the only source from which to draw their definition.  *See, e.g.,* WhenU Br. at 10-14, 21-25.  However, embodiments in the specifications do not impose requirements.  Rather, the embodiments provide guidance to understanding the claim term.  Indeed, as the Federal Circuit reiterated in the *Phillips* case, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to

which the patentee is entitled the right to exclude' . . . 'we look to the words of the claims

themselves . . . to define the scope of the patented invention.'"  *Phillips*, 415 F.3d at 1312.

## SPECIFIC TERMS FROM THE ASSERTED PATENTS

**A.     Terms From the '510 and '680 Patents**

**1.     *log of predetermined events***

WhenU's constructions of the above terms seek to add limitations which are unfounded in

the intrinsic evidence and remove language which is expressly contained within the claims.  For

example, WhenU asserts that the log must contain multiple entries, that the claims recite only a

single log and that "machine operation events" is required to mean "multiple operating system

messages."  WhenU Br. at 7.

According to WhenU, the "log" of the '510 and '680 patents *must* contain multiple entries.

WhenU Br. at 8.  WhenU reaches this conclusion by first asserting that "that the log must be

designed to contain multiple entries."  WhenU Br. at 8.  Even assuming the log *may* contain

multiple entries, however, the specification never states that the log *must* contain multiple entries.[2]

'510 patent, col. 1, ll. 57-60 ("According to the invention, operating system messages *may* be

intercepted and relevant messages *may* be recorded in a log file, along with other pertinent or

---

[2] WhenU has expressly acknowledged that the log may contain a single entry by referencing the so-called "maiden voyage" scenario in which "a ship's log will certainly have only a single entry if the ship sinks on its maiden voyage."  WhenU Br. at 8 n.5.  Even in view of this acknowledgement, WhenU asserts that "the log is nevertheless capable of multiple entries" and should be "defined by what it enables" rather than "how many entries are provided."  WhenU Br. at 8 n.5 (emphasis removed).  There are two significant problems with WhenU's reasoning.  First, if the log is capable of multiple entries, the log would also necessarily be capable of a single entry.  That is, a log with two entries must, at some point, have had only a single entry, and if, during the point between entries, "the ship sinks", the result would be a log with one entry.  Second, WhenU asserts that "log" should be defined by what it enables, because a ship's log is referred to as a log even "if there were no actual entries…because it has lines for multiple entries."  WhenU Br. at 8 n.5.  Here, WhenU recognizes that the log can have zero entries, but still be referred to as a log.  Therefore, WhenU's construction of "log" as requiring multiple entries is clearly wrong, even by their own statements.

useful information.") (emphasis added); '510 patent, col. 2, ll. 23-25 ("Events which are specific to child Windows of an application may not necessarily be logged."). The fact that examples of logs in the specification are shown as containing multiple entries does not turn that into a requirement of the claims.[3] WhenU's exceedingly narrow construction also has the disadvantage of being inconsistent with the plain meaning of the term "log" as set forth in technical dictionaries in use as of the filing date of the application for the '510 Patent, which define log as "a record" and do not impose the requirement of "containing multiple entries." NetRatings Br. at 11-12; Ex. 3 at 010 and Ex. 4 at 016.[4]

WhenU further asserts that NetRatings' construction of "log of predetermined [machine operation] events" is unduly broad, because "any piece of data that relates to a *single event* would fall within its interpretation." WhenU Br. at 9 (emphasis in original). However, the claims explicitly state that the log does not include *any* data regarding *any* event, but data regarding pre-selected potential events. '510 patent, claim 1 ("each including a log of predetermined machine operation events"); '680 patent, claim 1 ("each use meter including a log of predetermined events"). Thus, WhenU fails to recognize that NetRatings' construction follows the explicit claim language, reciting "a record of data regarding the occurrence of *pre-selected* potential events [related to machine operations]." JCCC[5] at 2 (emphasis added).

---

[3] WhenU also relies on "normal American English grammar rules" which purportedly require that the log include at least two entries, because the term "events" is written in the plural. WhenU Br. at 7-8. WhenU proffers the example of a book of poems, stating that "[o]ne would not refer to a book that contained a single poem as a 'book of poems.'" WhenU Br. at 8. While this example seems convenient in view of WhenU's overly narrow construction, NetRatings offers the example of "a book of matches." This phrase is grammatically correct and colloquially used to refer to a book of matches, even when containing a single match.

[4] Exhibits 1-10 are attached to the Declaration of Karine Louis, dated February 12, 2007.

[5] Hereinafter references to the Parties' Joint Claim Construction Chart, submitted with NetRatings' Opening Claim Construction Brief, will follow the form: "JCCC at ___."

WhenU also contends that the term "a log of predetermined machine operation events" recited in claim 1 of the '510 patent refers to a single log simply "[t]o make sense and to avoid indefiniteness" and that "[t]his is the only interpretation supported by the '510 Patent specification…." WhenU Br. at 9-10. Initially, it is noted that this is an extraneous interpretation of the claims and not a construction.[6] That is, WhenU does not indicate any portion of the specification requiring only a single log or providing any support for the legal conclusion that claim 1 would be indefinite unless the terms were referring to a single log.[7]

Further, WhenU's requirement that "log" must refer to a single log due to use of the phrase "a log" more than once within the same claim is contrary to rulings of the Federal Circuit. *Free Motion Fitness, Inc. v. Cybex International, Inc.*, 423 F.3d 1343, 1350 (Fed. Cir. 2005) ("'A' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'") (*quoting KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)).

## 2. *machine operation*

WhenU's construction of "machine operation events" clearly ignores the well-settled doctrine of claim differentiation which is "ultimately based on the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Technology Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999). Independent claim 10 of the '510 patent specifically recites the use of "operating system messages" and "predetermined types of messages." '510 patent, claim 10.

---

[6] WhenU's argument that the "log" in the claims of the '510 and '680 patents refers to a single log is not reflected in the Joint Claim Construction Chart. JCCC at 2.

[7] The phrase "a log of predetermined machine operation events" was recited in originally filed claim 1 and was never amended during prosecution. JA Ex. I, at JA00802-804 ('510 patent, Application as filed, at 16-18); JA01173-74 ('510 patent, Response Under 37 C.F.R. § 1.111 dated Dec. 26, 1996, at 1-2). None of the claims of the '510 patent were ever rejected under 35 U.S.C. § 112 for indefiniteness.

Thus, WhenU's construction requiring "machine operation events" to mean "multiple operating system messages" is contrary to the mandates of the Federal Circuit.

WhenU alleges that the term "machine operation events" must mean "multiple operating system messages," because the only "events" being recorded in the log are operating system messages. WhenU Br. at 10. However, the very portion of the specification that WhenU cites to in support of its construction states "operating system messages *may* be intercepted and relevant messages *may* be recorded in a log file…." '510 patent, col. 1, ll. 65-67 (emphasis added). Clearly, WhenU is selecting a particular embodiment from the specification and improperly reading features of that embodiment into the claims. *Phillips*, 415 F.3d at 1323. By contrast, the specification states that another embodiment "will monitor strings of characters sent to a communication port." '510 patent, col. 2, ll. 34-36. Similarly, claim 9 which depends from claim 1 recites "wherein said predetermined machine operation events include events corresponding to an intercepted modem character string." '510 patent, claim 9. Thus, WhenU is simultaneously selecting a particular embodiment from the specification to read onto claim 1 and ignoring other embodiments described in other claims and the specification. Arbitrarily selecting features from embodiments and attempting to interject those features into the claims has been rejected by the Federal Circuit on numerous occasions. *Lighting World*, 382 F.3d at 1360; *Playtex Prods., Inc. v. Procter & Gamble Company*, 400 F.3d 901, 907 (Fed. Cir. 2005)

   **3.**      ***identify titles of open windows; reflects a log of titles of worldwide web pages***

WhenU contends that the term "titles of open windows" must mean to identify "the full titles of the open windows as they appear in the window's title bar." JCCC at 1. While WhenU cites to portions of the specification and prosecution history of the '510 patent in purported support of its construction, neither those cites nor anything in the intrinsic evidence calls for such a limiting construction. '510 patent, col. 9, ll. 42-43 (exemplary log using a label T to identify

"the Windows title of the application" as designated by the Windows operating system).  In fact, WhenU's construction would frustrate one of the stated purposes of the invention as described in the specification and prosecution history.  '510 patent, col. 4, ll. 13-63 ("window titles" of applications "generally hold useful descriptions of the activity at that moment"); JA Ex. I, at JA01175-1176 ('510 patent, Response to Office Action dated Dec. 26, 1996, at 3-4) (the object of the logging of titles is *to identify what the user is doing on the computer* by *identifying*, for example, "any world wide web pages which are being used by the user") (emphasis supplied).[8]

Right in the middle of its constructions, WhenU switches gears and next contends that the very same word "title" as used in the phrase "reflects a log of titles of world wide web pages" must refer to the <title> tag in the Hyper-Text Markup Language (HTML) document which is rendered as a webpage in a web browser.  WhenU Br. at 12.  It is black letter law that the same words in a claim should be construed consistently.  *Callicrate v. Wadsworth Mfg., Inc*., 427 F.3d 1361, 1371-72 (Fed. Cir. 2005) ("Of course, this court interprets claim terms consistently throughout various claims of the same patent").  WhenU's proposed construction violates this principle.  Moreover, for similar reasons stated above with respect to "titles of open windows," WhenU's construction is wrong.  Here, WhenU does not even try to support its construction with intrinsic evidence -- for the simple reason that it can not.  There is no mention of a title "tag" in the intrinsic evidence.  Thus, while it is possible that titles of world wide web pages may be found within the TITLE tags of the HTML document, nothing in the intrinsic evidence requires it.

---

[8] Another stated purpose of the invention is to "enable classification of software usage at least by software title, classification of software subcategory (e.g., spreadsheets, screen savers, communications software, Personal Information Managers, word processors, etc.[)]…."  '510 patent, col. 3, ll. 54-56.  That is, classifying software usage by software title would not necessarily require extracting all of the information (e.g., the file name and application) from the window's title bar.

It is respectfully submitted that the Court should adopt NetRatings' constructions for the above terms fully supported by the intrinsic evidence and consistent with the plain meaning of the words in the terms as they would be understood from reading the specification.

**4.**     ***identifies character strings reflecting on-line activity***

With its proposed construction for this term, WhenU blatantly violates clear legal precedent and unabashedly imports - in total - a single described embodiment from the specification relating to how character strings are obtained rather than what they are.

WhenU attempts to find support for its wholesale addition to the claim term in two statements made during prosecution -- one where the applicant was identifying support in the specification for a new claim and the other by the examiner in the Notice of Allowance.  WhenU Br. at 13.  First, WhenU errantly points to an amendment wherein the applicants cited a portion of the specification as support for the term "identifies character strings reflecting on-line activity." JA Ex. J, at JA01537 ('680 patent, Preliminary Amendment dated Jan. 14, 2000, at 2) (canceling all previously pending claims and adding new claims).  The objective of this reference was only to show that the disputed term was fully supported by the original application and was not new matter.[9]  Providing support for an amendment during prosecution is not representative of meaning of the amended language.  *See Conoco, Inc. v. Energy & Environment Intern., L.C.*, 460 F.3d 1349, 1364 (Fed. Cir. 2006).

---

[9] 35 U.S.C. § 132 bars any amendment which introduces new matter into the disclosure of the invention. That is, once filed, the applicant is limited to what is contained in the specification, drawings and claims. Thus, when making amendments to the specification, drawing or claims during prosecution of a patent application, practitioners commonly provide support for such amendments to avoid objections or rejections of the claims under § 132.  In fact, the Manual of Patent Examining Procedure ("MPEP") states that "[a]pplicant should therefore specifically point out support for any amendments made to the disclosure." MPEP § 2163.06.  Thus, portions of the specification cited in support of an amendment should not be wholly relied on in construing terms within the amendment.

WhenU also cites to the Notice of Allowance of the '680 claims as purportedly supporting its construction.  However, it is well settled that a notice of allowance cannot be used to limit claim scope.  *Eolas Technologies Incorp. v. Microsoft Corp.,* 399 F.3d 1325, 1338 (Fed. Cir. 2005) (rejecting use of reasons for allowance to limit claim because "the applicant has 'no obligation to respond to an examiner's statement of Reasons for Allowance'").[10]

Therefore, not only is WhenU improperly reading features of an exemplary embodiment of the invention into the claims,[11] but its claim construction does not actually construe the claim terms.

**5.**     ***local computer use meter/user meter***

WhenU asserts that the only difference between the parties' constructions is that NetRatings construes the terms to mean "a software program designed to collect information regarding the use of *other* software programs…."  JCCC at 2 (emphasis added).  However, there are at least two additional differences between the parties' constructions: (1) WhenU's assertion that the meter "intercepts" computer use data, and (2) WhenU's assertion that the computer use data is "generated by software executing on the user's computer."  JCCC at 2.

WhenU's construction is not really a construction at all, but an attempt to import a functional limitation (the "how") into the claim language.  WhenU's requirement that the meter "intercept" errantly focuses the Court's attention on *how* the meter operates, rather than what the

---

[10] WhenU is suggesting, without any precedential support whatsoever, that the reasons for allowance are equivalent to the claim language itself.  In other words, to adhere to WhenU's approach, the scope of every patent that issues would be defined by what the examiner states in the reason for allowance.

[11] WhenU's construction does not actually provide an interpretation of the term "character strings," but interjects a description of the act of identifying the character strings.  JCCC at 2.  The portion of the '510 patent cited by WhenU describes an embodiment of the invention stating, "[t]he system may be set to monitor for certain predetermined character strings and log certain information upon occurrence of such strings."  '510 patent, col. 2, ll. 37-39.  The portion of the specification following the cited portion describes exemplary methodologies for identifying the character strings.  '510 patent, col. 2, ll. 39-44 ("If, *for example*, the system detects a 'http:' string, then the system will recognize….") (emphasis added).

meter is and/or its capabilities.  Indeed, when the claims wanted to cover how the meter operated, as they did in claims 8 and 18 which depend from independent claims 1 and 11, respectively, they did so.  *See, e.g., Phillips*, 415 F.3d at 1314-1315 ("For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").  It is respectfully submitted that construing "local computer use meter" to collect information regarding the use of other software programs by "intercepting" the information would inject an improper limitation regarding how the meter operates rather than what comprises the meter.[12]

WhenU criticizes NetRatings' construction of the term "local computer use meter" by arguing that it requires that the meter *only* monitor *other* software programs.  WhenU Br. at 15.  However, NetRatings' construction does no such thing.  Rather, NetRatings' construction defines the meter, in part, as a "software program *designed* to collect information regarding the use of other software programs…"  JCCC at 2.  Under this construction, a software program is a meter if, among other things, it is *designed* to collect information regarding the use of other software programs, even though it may also collect information about its own operation.  This definition is completely consistent with the many specification references cited by both NetRatings and WhenU of the meter as an application that monitors other applications.  NetRatings Br. at 9-10;

---

[12] It is further noted that the term "intercept" is used in the specification of the '510 and '680 patents to correspond to the monitoring and information collection functions described therein.  That is, the dictionary definitions of "intercept" include, *inter alia*, "to seize or stop on the way, before arrival at the intended place; stop or interrupt the course of; cut off."  Webster's New World Dictionary (1989) ("Webster's New World"), [intercept], attached as Exhibit 11 to the Declaration of Karine Louis dated March 14, 2007, at 052.  As used in the '510 and '680 patents, the term "intercept" is clearly meant to be interpreted in accordance with the former definition in that the meter monitors for predetermined messages as they are communicated but does not prevent such messages from reaching their intended destinations.  WhenU, however, does not indicate the definition of "intercept" being used in its interpretation.  Thus, to adopt WhenU's construction of "local computer use meter" would require the Court to take the additional step of, at least, construing "intercept."

WhenU Br. at 15.  It is also consistent with the ordinary understanding of the function a meter is typically designed to perform.

Therefore, WhenU's construction for "local computer use meter" not only differs from NetRatings' construction in several respects, but includes many limitations which are unsupported by the intrinsic evidence.  Accordingly, the Court should adopt NetRatings' construction, "a software program designed to collect information regarding the use of other software programs on a computer on which the software program is generated."

### 6. *stored in memory of said computer machines/stored in an associated user computer machine/storing said log of predetermined events by each use meter in an associated user machine*

WhenU contends that the "storing" element in each claim should connote a specific location within a computer.  JCCC at 2-3.  However, neither the claim language nor the specification indicate such a location.  In fact, to the extent there is a specific location, the location is set forth in the claims (e.g., '510 patent, claim 1 - local computer memory).  Otherwise, the claims are not limited to a specific location.[13]

WhenU states that "the terms 'stored' and 'storing' implicate something beyond mere transitory existence in volatile memory."  WhenU Br. at 16.  In support of this vague notion (i.e., WhenU's feeling that there must be something more to terms with well-understood meanings), WhenU cites to a portion of the specification which describes a process of updating the software for the meter when collecting information obtained by the meter.  '510 patent, col. 3, ll. 6-16.  Even in view of WhenU's attempt to pluck lines out-of-context from the specification, the fact

---

[13] In the same paragraph, WhenU states that "everything that is computer-implemented must exists in volatile memory" and "anything that is computer-implemented inherently requires storage in non-volatile memory."  WhenU Br. at 16 (emphasis removed).  While confusing, it appears that WhenU is asserting that all data handled by a computer must be stored in *both* volatile and non-volatile memory.  This is clearly incorrect, because existing data may be stored in a single location and new data received or generated may overwrite the existing data to occupy the same location.

that the log or events from the log are transferred to a processing station, or are used in reporting, does not require that the log be stored in "permanent medium" or a "hard disk drive."  As explained in NetRatings' Opening Brief, there are other possibilities and neither the claims nor the specification require a particular one.  *See* NetRatings Br. at 13-14.

WhenU intermittently relies on an embodiment in the specification described in columns 7-8 in which a "log flush operation" is performed to write logs that "are still held in memory." *See, e.g.,* WhenU Br. at 16.  However, rather than establish that logs must therefore be stored in permanent memory such as a hard drive, it actually proves the opposite.  That is, this embodiment, in which the log is written from memory, is discussing a shut down operation in which the meter is going to close itself down.  *See* '510 patent, col. 7, l. 29 – col. 8, l. 2.  Short of a shut down operation, however, the log may be, and apparently would typically be, stored in any memory in the computer machine, including transient memory, which is all the claim requires.

Therefore, NetRatings' constructions, which properly differentiate between the claim terms and are readily understood from and supported by the intrinsic evidence, should be adopted.

### 7.     *database management system*

WhenU states that the above term is a term-of-art and cites a portion of the '510 patent which describes exemplary functionalities of the database management system.  WhenU Br. at 17. While the specification provides various examples of functions of the database management system, the claims only state that the database management system be "configured to access, process and generate reports."  '510 patent, claim 1.

Even after calling out the description of the database management system in the specification, WhenU relies on a dictionary definition to assert that the database management system is "computer software" that is used to accomplish a set of functions, none of which are the functionalities recited in the claims or described in the specification.  WhenU Br. at 17.

Additionally, WhenU's conclusion (again without a technical basis) that the term "comports with the computer science understanding" should have no bearing on whether the database management system is implemented as hardware or software, or any combination thereof.

### 8.   *linked [to]*

WhenU's construction of "linked" ("connected via an electronic communication channel…") is the exact subject matter of dependent claims 2 and 12 in the '510 patent and dependent claims 4 and 15 in the '680 patent.  *Compare* JCCC at 3 *with* '510 patent, claims 2 and 4; '680 patent, claims 4 and 15.  WhenU's construction of the above term is thus clearly at odds with the doctrine of claim differentiation.  *Phillips*, 415 F.3d at 1314.  Moreover, WhenU's construction is simply incorrect in that it excludes an embodiment of the invention in which information collected by the meter is transferred to the processing station via diskette, which embodiment is the subject matter of, for example, claim 6 of the '510 patent.

### 9.   *dictionary / dictionary file*

WhenU asserts that the dictionary [file] must be "a fully customizable" file for interpreting data.  JCCC at 1.  Again, WhenU interjects a term from the specification, "customizable," the bounds of which would likely require further guidance from the Court.  Moreover, WhenU fails to show how the single specification reference it supplies in its brief supports its construction.  NetRatings' construction, "a database or file containing entries used to interpret or correlate data," is supported by the specification and is easily understood.  NetRatings Br. at 16-17.

### 10.   *a computer machine*

WhenU states that recitation of the term "a computer machine" more than once renders the claim indefinite under 35 U.S.C. § 112, second paragraph.  WhenU Br. at 18.  The proffered indefiniteness argument is based on a lack of antecedent basis and a rule against so-called "double inclusion."  WhenU Br. at 19.  However, MPEP § 2173.05(e) clearly states, "[o]bviously,

however, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite.  If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite."  Because the claims are readily understood and WhenU has not established otherwise, the term "a computer machine" is not indefinite and should not be required to be the same computer machine, as suggested by WhenU's alternative argument.[14]  Thus, the language of the claims is clear and does not require a single computer machine or multiple computer machines but rather allows for both possibilities.

Furthermore, WhenU's attempt to have the Court rule on validity issues during claim construction is improper.  In the recent *Phillips* case, the Federal Circuit addressed validity analyses in conjunction with claim construction and stated that a validity analysis should only be performed after "applying all available tools of claim construction" and determining "that the claim is still ambiguous."  *Phillips*, 415 F.3d at 1327.  *See also Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005), *quoting Phillips* (same).  The *Phillips* Court stated:

> While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, ***and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction***.  Instead, we have limited the maxim to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.  In such cases, we have looked to whether it is reasonable to infer that the PTO would not have issued an invalid patent, and that the ambiguity in the claim language should therefore be resolved in a manner that would preserve the patent's validity.

*Phillips*, 415 F.3d at 1327 (emphasis supplied).

In *StairMaster Sports/Medical Prods. v. Groupe Procycle*, the District Court of Delaware was presented with arguments similar to those made by WhenU.  *StairMaster Sports/Medical Prods. v. Groupe Procycle, Inc.*, Case No. 97-396 MMS, 1998 WL 290296 (D. Del. May 20,

---

[14] WhenU states that, should the Court construe "a computer machine," the Court should, without any reason whatsoever, impose the narrower of two constructions.  This request smacks of desperation.

1998).  The Court, in rejecting the defendant's arguments, noted that "[t]he Federal Circuit Court of Appeals…has consistently rejected this approach to claim construction and continues to draw a line between claim construction issues and issues of infringement and invalidity."  *StairMaster*, 1998 WL 290296, at *2 n.5.  The Court further noted that "[a]mbiguity, undue breadth, vagueness and triviality are matters which go to claim validity for failure to comply with 35 U.S.C. § 112, P2, not to interpretation of construction."  *Id.*  Thus, not only does precedent discourage validity determinations during claim construction, but the only reason to address the issue would be to uphold the patent's validity.[15]

Accordingly, WhenU's improper attempt to have this Court rule on validity issues during claim construction should be rejected.

### 11. *"means for interpreting the logged machine operation events by reference to the dictionary file"*

NetRatings agrees that the above term from claim 9 of the '510 patent is written in means-plus-function form and should be interpreted according to 35 U.S.C. § 112(6).  NetRatings Br. at 23.  Thus, the function is "interpreting the logged machine operation events by reference to the

---

[15] WhenU quotes *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999) as stating "an analysis under § 112, ¶ 2 is inextricably intertwined with claim construction."  Yet, the *Atmel* Court was referring to reasons for de novo review in that validity determinations, like claim construction, are a matter of law.  *Atmel*, 198 F.3d at 1378.  The quoted language was not directed to the issue of whether indefiniteness should be addressed during claim construction.

Similarly inapt is WhenU's citation to *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998), that "[a] determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duties as the construer of patent claims."  In *Personalized Media*, the Court was explaining that the test for indefiniteness is similar to that used in claim construction in that it is based on the understanding of one of ordinary skill in the art.  Again, however, the Court was not making a statement as to the propriety of ruling on validity during claim construction.  In fact, in *Personalized Media*, as in *Atmel*, the validity issue was resolved after construction of the claim terms at issue.  *Atmel*, 198 F.3d at 1377; *Personalized Media*, 161 F.3d at 705.  Indeed, both cases involved final dispositions on the merits; the courts were determining ultimate issues of infringement and invalidity.  *Atmel*, 198 F.3d at 1375-76 (appeal from decision on summary judgment motion of invalidity where district court decided that it would be efficient to "construe the claims before ruling on validity"); *Personalized Media*, 161 F.3d at 697 (appeal from final determination of International Trade Commission regarding infringement and invalidity).

dictionary file" and the corresponding structure is a computer programmed to perform the algorithm to accomplish the function.  NetRatings Br. at 23.  The specification provides examples of algorithms for performing the recited function.  *See, e.g.*, '510 patent, col. 7, l. 5 - col. 8, l. 9 (describing methods of generating log entries from operating system messages).  WhenU states that the parties agree on the function but states that the function is "ascribing meaning to elements of raw data contained in the log files."  WhenU Br. at 19.  Simply via the use of different terms, the parties are clearly not in agreement regarding the claimed function.

The parties also differ in identifying the structure performing the claimed function.  While WhenU states that no structure is disclosed and that the claim is indefinite,[16] the '510 patent states that a "central processing station may be a micro processor based computer and may utilize a variety of commercially available and/or custom developed data base management systems to manage the computer use data base and create a customized data dictionary . . . provided to interpret the raw data provided by the event log files."  '510 patent, col. 5, ll. 28-33.  Thus, at the very least, one of ordinary skill in the art would understand, upon a reading of the '510 patent, the structure performing the recited function.  *Atmel Corp.*, 198 F.3d at 1302 (Fed. Cir. 1999) ("the inquiry asks first whether structure *is* described in specification, and, if so, whether one skilled in the art would identify the structure from that description") (emphasis in original).

**B.    Terms From '386 Patent**

    **1.    *resource; resource use data***

WhenU's construction of "resource" departs from the intrinsic evidence and would, again, require the Court to engage in subsequent constructions.  That is, WhenU states that "resource" is "a collection of data that *may* be accessed over a network by a single name, such as a URL."

---

[16] As described above with reference to "a computer machine" (Sec. A(9)), NetRatings respectfully submits that validity contentions and determinations should not be addressed during claim construction.

JCCC at 3 (emphasis added).  By using the term "may," WhenU's construction implies that there are other collections of data which are either (i) accessible over a network, but not by a single name, (ii) not accessible over a network, but have a single name or (iii) not accessible over a network and do not have a single name.  Thus, WhenU's construction essentially amounts to a riddle for the Court.[17]

     NetRatings' construction is forthright, "computer data or program," and provides examples of the data or programs which may be considered "resources."  JCCC at 3.

    **2.**   ***interaction***

     In purporting to define this term, WhenU interjects a time-based feature to the term "interaction" requiring "actions taken on a computer over a period of time by a user."  JCCC at 4. To support the inclusion of this time-based feature, WhenU states that "[w]hen a word is used without an indefinite article, it is a clear indication of its intent to cover a plurality - not a single action."  WhenU Br. at 22.  Thus, WhenU's wholesale rule requires that "a word" (meaning "any word") that is used without an indefinite article implies an intent to cover a plurality. Unfortunately, this reasoning lacks any basis in law and sense.  Indeed, there are many words that are used to describe one or more items, without the use of an indefinite article.  For example, when someone is said to be having fish for dinner, the person may be and is likely eating a single fish even though the indefinite article does not precede the word fish.  Similarly, monitoring interaction may involve monitoring a single interaction.  This understanding of the word

---

[17] WhenU further states that "a single resource, such as a Web page, may contain multiple embedded resources (e.g., banner ads), and that those resources are also properly considered part of a single resource, i.e., the Web page."  WhenU Br. at 21.  According to this construction, many resources may comprise a single resource, and, when they do, they are considered part of the single resource but otherwise are themselves single resources.  This is a clear example of the problems that arise, replete in WhenU's constructions, when the construction includes the term being construed.

"interaction" is consistent with the specification as well as with the plain and ordinary meaning. NetRatings Br. at 22.

Ultimately, NetRatings asserts that the foregoing claim term has a plain and ordinary meaning and, accordingly, no construction is required. *Phillips* at 1314. To the extent that the court finds it necessary to construe this claim term, "interaction" should be construed in accordance with its plain and ordinary meaning.[18]

### 3. *resource use data*

WhenU contends that the term "resource use data" is not used in the specification of the '386 patent[19] and, thus, should be construed as "data derived from raw information concerning use of a resource." WhenU Br. at 22. WhenU initially states that the "resource use data … involves some type of calculation by the executable or tracking program." WhenU Br. at 22-23. However, claim 1 of the '386 patent, for example, simply recites, "storing resource use data associated with the monitored interaction." '386 patent, claim 1. Thus, there is no requirement in the independent claims that the tracking program have any involvement in creating the resource use data. Further, WhenU cites a statement in the '386 patent which describes various indicia that may be monitored: mouse events, keyboard events, etc. WhenU Br. at 20; '386 patent, col. 4, ll. 55-57. Thus, the resource use data need not be limited to time-based data, and certainly need not be limited to calculations performed on any time-based data. NetRatings' construction for this term, "information describing or derived from use of a resource," is the correct one.

---

[18] *See, e.g.*, NetRatings Br. at 22; Ex. 3 at 009 and Ex. 6 at 030.

[19] MPEP § 2173.05(e) states, "[t]here is no requirement that the words in the claim must match those used in the specification disclosure. Applicants are given a great deal of latitude in how they choose to define their invention so long as the terms and phrases used define the invention with a reasonable degree of clarity and precision."

**4.    *tracking program***

WhenU, without support, states that "the usual meaning of 'program' implies independent operation," and, as such, the term should be construed as "a software program that *can* operate on a computer independently of a browser."  WhenU Br. at 23 (emphasis added).  Again, WhenU refuses to commit to a solid construction.  WhenU Br. at 24 ("Accordingly, the term 'tracking program' should be construed to allow for execution independent from a web browser").  Essentially, WhenU's construction means that the tracking program may, but is not required to, be configured such that it can execute independently of a web browser.  Thus, adopting WhenU's construction of "tracking program" would require further construction by the Court to define the scope of the term.  In contrast, NetRatings' construction, "computer readable code that monitors use of a computer," requires no further construction and is fully supported by the intrinsic evidence. *See, e.g.,* '386 patent, col. 10, ll. 22-24 and 56-67 (tracking program may be implemented through use of a Java applet, wherein a Java applet "run[s] *within* a Web browser") (emphasis added).

**5.    *storing***

Even with regard to a different patent (as compared to the '510 and '680 patents), WhenU asserts that the term "storing" requires the data to be written to a hard disk drive.  *Compare* JCCC at 2-3 *with* JCCC at 4.  Because WhenU is asserting that "storing" should be construed identically with regard to the '386 patent and the '510/'680 patents, it is clearly relying on extrinsic evidence. That is, the portions of the specification cited by WhenU never identify a particular type of memory, and WhenU has not so much as offered a dictionary definition of "storing" which supports its conclusion that the term requires writing data to a hard disk drive.  However, WhenU's construction is inconsistent with the extrinsic evidence.  NetRatings Br. at 22-23.

While the Court may determine that this term requires no construction, support for NetRatings' construction, "placing in memory or on a mass storage device," can be found in the

specification.  '386 patent, col. 7, ll. 40-59 (describing an embodiment of a client computer with volatile and non-volatile memory).

      **6.**     ***embedded***

WhenU intends to limit the term "embedded" to exclude a scenario in which the tracking program is fully contained within a web page, even though NetRatings has proffered several definitions of "embedded" with encompass both incorporation by reference and being wholly contained within.  NetRatings Br. at 21; Ex. 5 at 020, Ex. 6 at 029 and Ex. 8 at 040.  There is no indication in the intrinsic evidence that either of these meanings of "embedded" were disclaimed. Thus, it is NetRatings' construction, "contained within or incorporated by reference" which should be adopted by the Court.

**CONCLUSION**

For all the reasons stated above, NetRatings requests that the disputed claim terms be construed in the manner proposed by NetRatings in the Joint Claim Construction Chart.

Dated: March 14, 2007                    Respectfully submitted,

                                                     **DREIER LLP**

                                            By: /s/ Seth H. Ostrow
                                                  Seth H. Ostrow (SO 9605)
                                                  Arianna Frankl (AF 7764)
                                                    Karine Louis (KL 6652)

                                            499 Park Avenue
                                            New York, New York 10022
                                            (212) 328-6100

                                            Attorneys for Plaintiff NetRatings, Inc.

## <u>DECLARATION OF SERVICE</u>

I, Karine Louis, declare that on the 14th day of March 2007, I caused a true and correct copy of NetRatings, Inc.'s Rebuttal Claim Construction Brief to be served upon the following persons in the manner indicated.

*By Electronic Mail*:

Brian Buroker
bburoker@hunton.com

Jeff Leaning
jleaning@hunton.com

Lindsey Marlatt
lmarlatt@hunton.com

Celia Barenholtz
cbarenholtz@cooley.com

Ian Shapiro
ishapiro@kronishlieb.com


Attorneys for WhenU.com, Inc.


I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of March 2007 at New York, New York.


                                        /s/ Karine Louis
                                        Karine Louis


235813

22