UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

NETRATINGS, INC.,
                        :   Civil Action No. 06-3356 (PKC)

            Plaintiff,
                        :

   vs.
                        :

                        **ORAL ARGUMENT REQUESTED**

WHENU.COM, INC.,         :

            Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF THE OPPOSITION OF
NETRATINGS, INC. AND THIRD-PARTY INVENTORS STEVEN COFFEY,
DAVID PINSLEY, KAREN POLONIEWICZ, STEPHEN COSTELLO
AND STEVEN STANZIANI TO WHENU.COM, INC'S LETTER MOTION
TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS**

Seth H. Ostrow (SO 9605)
Arianna Frankl (AF 7764)
Karine Louis (KL 6652)
**DREIER LLP**
499 Park Avenue
New York, New York 10022
(T) 212-328-6100

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................1
FACTUAL BACKGROUND .................................................................................................2
ARGUMENT ..........................................................................................................................6
A.  Record Numbers 1953-1955 and 2049 Are Privileged ............................................6
B.  WhenU's Assumption That The Inventor Documents Were
    Provided to NetRatings Is Wrong and Accordingly Its
    Waiver Argument Must Be Rejected ........................................................................9
C.  Disclosure of the Documents to the Inventors'
    Counsel Does Not Constitute a Waiver ...................................................................11
D.  A Community of Interest Does Exist
    Between NetRatings, the Inventors and NPD .........................................................12
CONCLUSION .....................................................................................................................14

## **TABLE OF AUTHORITIES**

**CASES**

*Carpenter v. U.S.*,
　　484 U.S. 19 (1987) ..................................................................................................11

*Commodity Futures Trading Commission v. Weintraub*,
　　471 U.S. 343 (1985) ..................................................................................................12

*Hydraflow, Inc. v. Enidine Inc.*,
　　145 F.R.D. 626 (W.D.N.Y. 1993 ................................................................................7

*In re Cendant Corp. Securities Litigation*,
　　404 F.3d 173 (3rd Cir. 2005) ................................................................................11, 12

*In re Omnicom Group, Inc. Securities Litigation*,
　　233 F.R.D. 400 (S.D.N.Y. 2006) ...............................................................................10

*In re Regents of the Univ. of Cal.*,
　　101 F.3d 1386 (Fed. Cir. 1996) .................................................................................12

*In re Rivastigmine Patent Litigation*,
　　Case No. 05 MD 1661, 2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005)) ..................13

*In re Spalding*,
　　203 F.3d 800 (Fed. Cir. 2000) ..................................................................................7, 8

*Infosystems, Inc. v. Ceridian Corp.*,
　　197 F.R.D. 303 (E.D. Mich. 2000) ............................................................................11

*Johnson Matthey, Inc. v. Research Corp.*,
　　No. 01-CIV-8115, 2002 WL 1728566 (S.D.N.Y. July 24, 2002)) ...........................14

*Meoli v. American Medical Service of San Diego*,
　　287 B.R. 808 (S.D. Cal. 2003) ..................................................................................11

*Sawyer v. Southwest Airlines,* Nos. Civ. A. 01-2385,
　　Civ. A. 01-2386, 2002 WL 31928442 (D. Kan. Dec. 23, 2002) ...............................10

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
　　Case No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 4254 (S.D.N.Y. 2000) ..................7, 8

*Tennenbaum v. Deloitte & Touche*,
　　77 F.3d 337 (9th Cir. 1996) ....................................................................................9, 10

*Thomas v. F.F. Financial, Inc.*,
　　128 F.R.D. 192 (S.D.N.Y. 1989) ................................................................................6

*Upjohn Co. v. U.S.,*
    449 U.S. 383 (1981) ..................................................................................................11

*Verschoth v. Time Warner, Inc.,*
    2001 U.S. Dist. LEXIS 3174 (S.D.N.Y. 2001) ................................................................8

*Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.,*
    No. 06-Civ-7785, 2007 WL 1573913 (S.D.N.Y. May 24, 2007) ........................................6

# INTRODUCTION

Plaintiff NetRatings, Inc. ("NetRatings") and third-party inventors Steven Coffey, David Pinsley, Karen Poloniewicz, Stephen Costello and Steven Stanziani (the "inventors", and collectively with NetRatings, the "Opponents") submit this memorandum of law and supporting declarations in opposition to WhenU.com, Inc.'s ("WhenU") September 6, 2007 letter motion ("WhenU's Motion") to compel production of certain privileged documents (Record Nos. 1953-55 and 2049) and further to the Court's Order of September 7, 2007. The Opponents respectfully request oral argument as to WhenU's Motion. As discussed below, WhenU's Motion is based upon several legal and factual inaccuracies. First, WhenU erroneously asserts that the documents corresponding to Record Numbers 1953-55 and 2049 (the "Inventor Documents") are not privileged because there is no indication on the privilege log that the communications were "requesting or reflecting legal advice." Contrary to WhenU's assertion, however, the communications are clearly privileged communications between a former patent owner's employees, including the patent inventors, on the one hand, and patent prosecution counsel, on the other, concerning the very patent application for which counsel was retained. The law is clear that such communications are privileged.

As an alternative, WhenU argues that even if the Inventor Documents were privileged at one time, the privilege was waived by virtue of a disclosure to NetRatings. WhenU is simply wrong. No such disclosure was ever made. Accordingly no waiver occurred.

In short, privilege as to the Inventor Documents existed in the first instance, and has been properly asserted and preserved by those with authority to do so, including the inventors, as current and past employees of the prior owners of the patents. No disclosure of the documents in question has been made to entities outside the confines of the privilege. For these reasons, as

more fully explained below, the privilege should be enforced by the Court and WhenU's Motion denied.

**FACTUAL BACKGROUND**

NetRatings alleges that WhenU infringes three NetRatings' patents, including U.S. Patent Nos. 5,675,510 ("the '510 Patent") and 6,115,680 ("the '680 Patent") (collectively "the Coffey Patents"). NetRatings acquired the Coffey Patents from Jupiter Media Metrix, Inc. Declaration of Arianna Frankl dated September 20, 2007 ("Frankl Decl.") Ex. 1.[1]

The '510 Patent was invented by three individuals, David Pinsley, Steven Coffey and Karen Poloniewicz, who were working at The NPD Group, Inc. ("NPD"), a consumer research company, in 1994. Frankl Decl. Ex. 6; Ex. 7 (5/29/07 Pinsley Tr. at 12:21-22; 14:3-17); Ex. 8 (3/2/07 Coffey Tr. at 20:8-16; 224:16 - 225:23); Ex. 9 (5/19/06 Poloniewicz Tr. at 12:9-10; 14:3 15:5).[2] Fulbright & Jaworski LLP ("Fulbright") was engaged to prepare and prosecute the applications that led to issuance of the Coffey Patents as well as related foreign applications, and has represented each successive owner of the Coffey Patents, including NetRatings. *See, e.g.,* Frankl Decl. Ex. 10; Declaration of Mark Ungerman ("Ungerman Decl."), dated 9/17/07, ¶ 4.

The application for the '510 Patent was filed on June 7, 1995 and issued on October 7, 1997. In July 1995, the inventors (Coffey, Pinsley and Poloniewicz) signed a power of attorney authorizing Fulbright to prosecute the application on their behalves, assigned their rights in the application to NPD and affirmed that they would cooperate with prosecution counsel during prosecution. Frankl Decl. Ex.10; Ex. 2. The inventors worked with Fulbright during prosecution

---

[1] The Coffey Patents were originally assigned to The NPD Group, Inc. ("NPD") by the inventors, and were later assigned to entities related to NPD, prior to being assigned to NetRatings. Frankl Decl. Ex. 2; Ex. 3; Ex. 4; Ex. 5.

[2] 5/29/07 Deposition of David Pinsley taken in *NetRatings, Inc. v. WhenU.com, Inc.;* 3/2/07 Deposition of Steve Coffey taken in *NetRatings, Inc. v. WebSideStory, Inc.;* 5/19/06 Deposition of Karen A. Poloniewicz taken in *NetRatings, Inc. v. Coremetrics, Inc.*

2

of the '510 Patent, and in connection with the filing of the application for the '680 Patent, which claims priority to the '510 Patent and includes two other inventors, Stephen Costello and Steven Stanziani. *See, e.g.,* Frankl Decl. Ex. 11; Ex. 12;[3] and Ex. 13 (Eighth Log: Record Nos. 1966; 1955; 2006; 2088; 2011; 2039; 2031; 2024; 2021). Mr. Costello and Mr. Stanziani were also employees of NPD. Frankl Decl. Ex. 14 (4/23/03 Costello Tr. at 12:24 - 23:11); Ex. 15 (5/16/06 Stanziani Tr. at 10:3-8).[4] David Pinsley was the primary inventor involved in working with Fulbright throughout prosecution. Frankl Decl. Ex. 7 (5/29/07 Pinsley Tr. at 14:18 - 15:24).

After acquiring the Coffey Patents, NetRatings engaged Fulbright to handle intellectual property matters, including relating to the Coffey Patents. *See, e.g.,* Frankl Decl. Ex. 13 (Eighth Log: Record No. 2059 (retainer letter)). Commencing in May 2005, NetRatings initiated several lawsuits involving the Coffey Patents.[5] The inventors, anticipating that they would be called upon through discovery subpoenas and possibly during trial to provide documents and/or testimony, retained Brown Raysman Millstein Felder & Steiner LLP ("Brown Raysman") and then subsequently, and currently, Dreier LLP ("Dreier").[6] *See* Frankl Decl. Ex. 16 (Ninth Supplemental Privilege Log of NetRatings Record Nos. 2093, 2098-2015; 2107). Further in anticipation of the subpoenas on the inventors, and on NPD, and in view of the expectation that

---

[3] The U.S. patent application for the '680 Patent was a national phase filing of Patent Cooperation Treaty ("PCT") application PCT/US96/10091, which had been filed on June 7, 1996.

[4] 4/23/03 Deposition of Stephen Costello taken in *Jupiter Media Metrix, Inc. v. NetRatings, Inc.*; 5/16/06 Deposition of Stephen Stanziani taken in *NetRatings, Inc. v. Coremetrics, Inc..*

[5] Lawsuits were initiated against: Omniture, Inc. (Case No. 05-CV-313 (D. Del.)), Coremetrics, Inc. (Case No. 05-CV-314 (D. Del.)), SageMetrics Corp. (Case No. CV05-4507 (C.D. Ca.)), Sane Solutions, LLC (Case No. 05-5076 (S.D.N.Y.)), Visual Sciences, LLC (Case No. 2:05-CV-349 (E.D. Va.)), WebSideStory, Inc. (06-CV-878 (S.D.N.Y.)), WebTrends, Inc. (Case No. 06-CV-1420 (D. Or.)), Digital River, Inc. and Fireclick, Inc. (Case No. 06-CV-03988 (D. Minn.)), 180Solutions, Inc. (Case No. 06-cv-3353 (S.D.N.Y.)) and Tacoda, Inc. (Case No. 06-CV-8186 (S.D.N.Y.)).

[6] NetRatings was (and is) represented by the same counsel. For both NetRatings and the inventors, the change of counsel to Dreier was the result of the move of principal counsel from Brown Raysman to Dreier in the fall of 2006. Frankl Decl. ¶ 3.

such entities would need to coordinate and be able to communicate with each other in connection with the various responses to all of the legal process, NetRatings, the inventors, and NPD entered into a Community of Interest Agreement. Frankl Decl. Ex. 16 (Ninth Supplemental Privilege Log of NetRatings: Record No. 2096).

As expected, the inventors were subpoenaed on many occasions, and indeed, continue to receive subpoenas concerning their involvement in invention and prosecution of the Coffey Patents. *See, e.g.,* Frankl Decl. Exs. 17-22. Notably, the subpoenas were served on the inventors in their individual capacities, not as representatives of their employer (which, for all but Karen Poloniewicz, continues to be NPD). *Id.*

In connection with some subpoenas, the inventors also appeared to be deposed. *See, e.g.,* Frankl Decl. Exs. 7-9. Prior to each deposition, the inventors were prepared by, and at each deposition, the inventors were represented by, Brown Raysman and/or Dreier. *See, e.g.,* Frankl Decl. Ex. 8 (3/2/07 Coffey Tr. at 3:4-9; 283:15 - 19); Ex. 23 (2/9/07 Pinsley Tr. at 3:11-16; 92:2-15). The various subpoenas covered subject matter which included both privileged and confidential information relating to the inventors' involvement in the prosecution of the Coffey Patents and work at their respective employers. *See, e.g.,* Frankl Decl. Ex. 18 (Request Nos. 1 and 3 for "[a]ll documents concerning the Patents in Suit…."; Request No. 3 for "[a]ll documents concerning communications between [Steven R. Coffey] and…any other entity or individual concerning the Patents in Suit."); Ex. 20 (Request Nos. 1 for "[a]ll documents concerning the Patents in Suit…." and 3 for "[a]ll documents concerning communications between [David B. Pinsley] and…any other entity or individual concerning the Patents in Suit."). Subpoenas similar to those served on the inventors were also served on related entities, such as NPD and Fulbright. *See, e.g.,* Frankl Decl. Exs. 24-25.

4

In response to the subpoenas served, including those by WhenU in this case, each of the inventors, NPD and Fulbright all timely asserted claims of privilege, among other objections. *See, e.g.,* Frankl Decl. Exs. 26-32.  Further, in connection with the myriad discovery requests and third-party subpoenas, Brown Raysman and Dreier collected substantial volumes of documents from NetRatings and the inventors, as well as NPD and Fulbright.  Frankl Decl. ¶ 4.  That collection commenced well prior to the initiation of the present case involving WhenU.  Frankl Decl. ¶ 4. At no point since Brown Raysman and then Dreier had possession of the documents collected from various sources did either firm disclose to NetRatings personnel any documents that were privileged solely as to the inventors (or NPD), nor did Brown Raysman or Dreier disclose to the inventors any documents which were solely privileged as to NetRatings.  Frankl Decl. ¶ 5.

Over 25,000 documents were initially identified as potentially privileged in mid-2006, culled out of a set of over 550,000 documents.  That preliminary privilege set was further reviewed to reduce the number to the over 2,400 documents which were logged.  Declaration of Karine Louis, dated 9/20/07 ("Louis Decl.") ¶ 3.  This process was commenced before the lawsuit against WhenU was filed, and the logs were actually created in connection with a different lawsuit (NetRatings, Inc. v. WebSideStory, Inc.), which has since settled.  Louis Decl. ¶ 4.  Because of the of the magnitude of documents and multiple entities with privilege claims as to the various documents, in general, logs were created based on document sources (*e.g.,* documents from Fulbright's files were grouped together).  Louis Decl. ¶ 5.  WhenU is well aware that multiple different entities are believed to have privilege interest in one or more of the documents, including the Inventor Documents.  *See, e.g.,* Frankl Decl. Exs. 33-35.  For the

5

Record Numbers at issue, privilege interests are being asserted by at least the inventors, NPD and Fulbright.

## ARGUMENT

### A. Record Numbers 1953-1955 And 2049 Are Privileged

WhenU argues, in only one sentence of its Motion, the Inventor Documents are not privileged in the first instance because the Eighth Log does not indicate that the Inventor Documents were communications "requesting or reflecting legal advice." WhenU Motion at 2. WhenU's argument is wrong and entirely lacking in support. Indeed, WhenU has clearly had in its possession more than adequate information to have recognized the impropriety of its argument, including the Eighth Log, the record of discovery and motion practice in this case, and the public record of prosecution of the Coffey Patents.[7]

The classic statement of the standard for whether attorney-client privilege applies is as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Thomas v. F.F. Financial, Inc.,* 128 F.R.D. 192, 192-193 (S.D.N.Y. 1989). *See also Wellnx Life Sciences, Inc. v. Iovate Health Sciences Research, Inc.*, No. 06-Civ-7785, 2007 WL 1573913, at *2 (S.D.N.Y. May 24, 2007) (Castel, J.).

---

[7] Still further, WhenU could have simply asked for confirmation that the documents "requested or reflected legal advice" if it was unsure of that fact. Instead, WhenU simply proceeded to move the Court on this issue, without any prior inquiry or meet and confer.

6

Applying the foregoing test, with respect to the first and second prongs, the holder of the privilege is NPD, the first assignee of the Coffey Patents.  The communications were between NPD employees responsible for invention, preparation and participation in prosecution of the patent applications, on the one hand, and NPD's patent prosecution counsel, Fulbright, on the other.  As identified on the Eighth Log, the communications were concerning the patent applications, a matter for which Fulbright was engaged by NPD.  *See supra* at p. 3.[8]  Accordingly, the first two prongs of the privilege test are satisfied.  Such a result is also clearly in accord with precedent; communications between patent owners, their employees and prosecution counsel are privileged.  *See, e.g., Softview Computer Prods. Corp. v. Haworth, Inc.*, Case No. 97 Civ. 8815 (KMW)(HBP), 2000 U.S. Dist. LEXIS 4254, at *9 (S.D.N.Y. Mar. 31, 2000) (*quoting Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 632 (W.D.N.Y. 1993) ("The same considerations which justify applying the privilege to the typical communications between clients and their attorneys also warrant that the privilege be applied appropriately to the exchanges between clients and patent counsel incident to the patent application process.")).

With respect to the third prong of the test, as noted on the Eighth Log, the documents corresponding to record numbers 1953-55 and 2049 are communications between Mr. Ungerman and Mr. Pinsley regarding the patent application.  Such communications were thus clearly related to the matter for which Fulbright had been retained (to prosecute the patent application), which is a legal service.  *See, e.g., In re Spalding*, 203 F.3d 800, 806 (Fed. Cir. 2000) ("[t]he preparation

---

[8]  Record numbers 1953 and 1954 comprise a facsimile of a memorandum from David Pinsley to Mark Ungerman, Esq., dated March 14, 1995, concerning the patent application (Record Number 1954, the memo, was copied to Lanny Catz and Steve Coffey).  Record number 1955 is a memorandum from David Pinsley to Mark Ungerman, Esq., copying Lanny Catz, Steve Coffey, and Denis Conway, dated May 19, 1995, concerning the patent application.  Record number 2049 is a letter from Mark Ungerman, Esq. to David Pinsley, copying Mark N. Mutterperl, Esq., dated March 22, 1995, concerning the patent application.

7

and prosecution of patent applications for others constitutes the practice of law."); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 U.S. Dist. LEXIS 4254, at *9 ("The preparation and prosecution of patent applications for others constitutes the practice of law."). With respect to the aspect of this part of the test concerning the communication being "without the presence of strangers," the communications were copied to certain other NPD employees involved in the prosecution process, including another inventor of the Coffey Patents, Steven Coffey, and in one instance, to another attorney at Fulbright. Thus, the communications were only among NPD employees and counsel, none of which would be considered "strangers" as to the privilege. *See, e.g., Verschoth v. Time Warner, Inc.*, 00 Civ. 1339 (AGS) (JCF), 2001 U.S. Dist. LEXIS 3174 *5 (S.D.N.Y. Mar. 22, 2001) ("The attorney-client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.")

As to the fourth prong generally, the privilege has both been claimed – on many occasions – and not waived. NPD, the inventors, Fulbright and Dreier have all objected to disclosure of the documents on the ground of privilege in connection with their subpoena responses, as well as in letters, during depositions, and in connection with motion practice in the District of Columbia.[9] *See supra* at 3-4. In addition, privilege was asserted through identification of the documents on the Eighth Log in compliance with Local Rule 26.2. Each Record Number identifies the "type of the document," the "general subject matter", the date and the author and recipients (with attorneys identified with an "Esq."), as well as a name index

---

[9] Of course, each of these entities has objected and asserted privilege as to the documents in connection with other subpoenas in other cases as well. *See id.*

identifying what companies or law firms the authors and recipients are associated with.  *See* Local Rule 26.2(A); Frankl Decl. Ex. 13.[10]

Finally, as to the issue of waiver, contrary to WhenU's assertions, privilege has not been waived by virtue of the documents having been disclosed to NetRatings.  No such disclosure was made.  To the extent that WhenU contends that the identification of the documents on a privilege log identified as "NetRatings" constituted a waiver, such contention is erroneous, as further discussed below.

**B.       WhenU's Assumption That The Inventor Documents Were Provided To NetRatings Is Wrong And Accordingly Its Waiver Argument Must Be Rejected**

WhenU's main premise for its Motion is the incorrect assumption that the Inventor Documents were disclosed to NetRatings because the documents were identified on a log which was identified as "of NetRatings."  WhenU Motion at 3.  Not only is WhenU's assumption incorrect, but WhenU was informed of this prior to bringing its Motion.  *See, e.g.,* Frankl Dec. Ex. 35.[11]  The fact is that the Inventor Documents were never provided to NetRatings.  *See supra* p. 4; Declaration of Peter Piazza, Esq., dated 9/17/07 ("Piazza Decl.") ¶ 5; Ungerman Decl. ¶ 6.  This fact should be considered dispositive; without an actual disclosure, there can be no waiver.  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996) (waiver of privilege cannot occur absent an actual disclosure of the privileged information).

---

[10] The identification of the authors and recipients and subject matter should have made clear to WhenU that the communications were concerning prosecution of the patents, and the assertion of privilege should have made clear the communications were believed to relate to obtaining legal advice in connection therewith.  To the extent that WhenU contends that the addition of an explicit statement that the communication was "representing or reflecting legal advice," such contention is without merit and would elevate form over substance.

[11] WhenU was informed of this in the letter submitted by Dreier to the Court on August 1, 2007, which stated "[w]hile there is a community of interest between the inventors and the former assignee of the '510 and '680 patents, The NPD Group, Inc., on the one hand, and NetRatings, on the other, **the information possessed by Dreier as counsel for the inventors has not been disclosed to NetRatings to avoid any risk of waiver of the privilege**."  Frankl Decl. Ex. 35.  (emphasis supplied).

For the same reason, the fact that the documents were identified on a log "of NetRatings" cannot result in a waiver. *See, e.g., Tennenbaum*, 77 F.3d at 339 (even where there was an express written agreement by the privilege holder to disclose the documents at issue and waive privilege relating thereto, where the documents had not in fact been disclosed, the Court held that no waiver could result). The naming of each privilege log provided to WhenU, including the Eighth Log, was for administrative identification purposes. As explained *supra* at 6, Dreier grouped documents in logs based on source notwithstanding that there were, in many cases, multiple entities with privilege interests in the documents. For some documents on the log, including the Inventor Documents, the privilege rests primarily with the inventors and NPD. For others, the privilege rests with NetRatings. In light of the extensive quantity of documents and the multiple privilege interests involved, generating privilege logs in this manner was a reasonable and efficient approach. There is no authority that counsel is aware of which would support waiver on this basis, nor does WhenU present any. Further, such an approach would elevate form over substance in contravention of the principles behind privilege protection. *See Sawyer v. Southwest Airlines*, Case No. Civ.A.01-2385, Civ.A.01-2386, 2002 WL 31928442, at *3 (D. Kan. Dec. 23, 2002) (elevation of form over substance "would contravene the important policies underlying the attorney-client privilege.").[12] Accordingly, the fact that the Eighth Log

---

[12] WhenU's citation to *In re Omnicom Group, Inc. Securities Litigation*, 233 F.R.D. 400 (S.D.N.Y. 2006) is off-point. The *Omnicom* case was addressing a very specific situation where the party asserting the privilege is specifically relying on advice of counsel or a fact communicated with counsel in support of that party's own claim or defense. Such situations are common in the context of reliance on an opinion of counsel as a defense, for example, to an allegation of wilfullness in a patent case, but they are unrelated to the facts here. *See In re Omnicom Group, Inc. Securities Litigation* Omnicom, 233 F.R.D. 400, 413-414 (S.D.N.Y. 2006) ("When a party invokes a defense based on the notion that he relied on the advice of counsel, the courts generally treat that stance as a waiver of both the substance of the attorney's opinion-assuming that it has been given and maintained in confidence-and of all communications by the client to the attorney pertaining to the matters that are addressed by the attorney's stated opinion.").

10

was identified as "of NetRatings" is insufficient to waive privilege as to the Inventor Documents where such documents were not actually provided to NetRatings.

### C. Disclosure Of The Documents To The Inventors' Counsel Does Not Constitute A Waiver

To the extent WhenU contends that the disclosure of the Inventor Documents to Dreier or Brown Raysman somehow constituted a waiver, such an argument would be erroneous. The inventors are entitled to assert the privilege and to disclose privileged information to their attorneys.

The inventors, as employees of NPD, may assert privilege with respect to the Inventor Documents. *See Upjohn Co. v. U.S.,* 449 U.S. 383, 395 (1981) (employees assert privilege on behalf of corporation employer) and *Meoli v. American Medical Service of San Diego*, 287 B.R. 808, 818 (S.D. Cal. 2003) ("An officer or employee of a corporation may assert or waive privileges on behalf of the corporation."). This is true for current or former employees. *See Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) ("privileged communications which occur during the period of employment do not lose their protection when the employee leaves the client corporation") (internal citations omitted). Thus, even if NPD is the principal holder of the privilege as to the Inventor Documents, the inventors have the right (and an apparent obligation) to assert appropriate objections to protect such information. *See, e.g., Carpenter v. U.S.,* 484 U.S. 19, 27 (1987) ("even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment") (internal citation omitted).

Further, where employees are individually served with legal process compelling their production of documents and/or appearance for deposition, such individuals must have the right to representation by counsel, and of their choosing. *See, e.g., In re Cendant Corp. Securities*

*Litigation*, 404 F.3d 173, 186 (3rd Cir. 2005) (describing the attorney-client relationship as providing "a client with the right and ability to select, monitor, and compensate his attorney"). If the legal process calls for information confidential or privileged to the individual's current or past employer and to which the individual was properly privy, the individual must also be empowered to communicate freely with his or her counsel about such matters in order to fairly meet the legal compulsion. This is a basic tenet of the attorney-client privilege. *See Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348 (1985) ("the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients.").

Accordingly, any potential assertions by WhenU that the inventors are not able to assert privilege, or any potential assertions of waiver based on disclosure of documents to the inventors' counsel, should be rejected.

### D.      A Community Of Interest Does Exist Between NetRatings, The Inventors and NPD

WhenU argues in its Motion that the Inventor Documents are not subject to a community of interest between NetRatings, the inventors and/or NPD. WhenU Motion at 2. Although it should not be necessary to reach the issue in view of the absence of any disclosure, WhenU's argument is wrong. "The protection of communications among clients and attorneys 'allied in a common legal cause' has long been recognized." *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). NetRatings, the inventors and NPD are "allied in a common legal cause." The fact that NetRatings and NPD are not co-owners of the patents should not be the controlling issue as WhenU suggests. Common legal interests certainly exist beyond simple ownership rights. NetRatings, the inventors, and NPD have been subject to significant legal process during the past two years concerning the Coffey Patents. NetRatings and NPD were both represented by the same prosecution counsel with respect to the Coffey Patents, Fulbright.

These entities anticipated that they would be and were in fact subject to many forms of discovery and subpoena demands for which the information sought would relate to a multitude of issues surrounding the patents and prosecution thereof. For instance, Fulbright has been subject to several subpoenas and appeared for a deposition. Both NetRatings and NPD had legal interests in the appropriate response and objections of their common counsel, as to disclosure of non-privileged information concerning the same prosecution issues and the protection of privileged information. Indeed, NetRatings, the inventors and NPD anticipated that there would be the need to coordinate at least with respect to the many discovery demands and subpoenas which have been served on the various entities, and needed to be able to communicate with each other in connection with the various responses to all of the legal process.[13] For these reasons, they entered into a community of interest agreement, which definitively demonstrates their "actual cooperation toward a common legal goal." *In re Rivastigmine Patent Litigation*, Case No. 05 MD 1661, 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22, 2005); Frankl Decl. Ex. 16 (Ninth Supp. Privilege Log of NetRatings: Record No. 2096).[14]

---

[13] In addition, in the Assignment executed by the named inventors of the '510 Patent, the inventors agreed "that at any time upon request of [NPD], its successors, legal representatives or assigns, [the inventors] will…perform all other lawful acts deemed necessary or desirable by [NPD], its successors, legal representatives or assigns to perfect title to said invention, to said applications including divisions, continuations, reissues, extensions, additions, and renewals thereof and to…assist [NPD], its successor, legal representatives or assigns in obtaining, reiussing or enforcing Letters Patent for said invention." *See, e.g.,* Ex.2.

[14] The *Rivastigmine* case is cited by WhenU as "holding that once rights are assigned away, inventor communications are not shielded by the common interest doctrine." In fact, the Court discussed but specifically did *not* resolve whether there were any remaining legal interests based on the fact that the rights had been assigned. The Court considered the issue in the context of the argument that the prior owner was to receive royalties and noted that there was conflicting case law on the point. *Rivastigmine*, 2005 WL 2319005, *at 3-4. In ultimately finding the common interest doctrine inapplicable, the Court focused on the fact that there was no evidence of "actual cooperation toward a common legal goal," not based on the absence of a common legal interest. *Rivastigmine*, 2005 WL 2319005, *at 5. In its decision, the Court noted that the common interest doctrine "has routinely been applied in the context of patent litigation." *Rivastigmine*, 2005 WL 2319005, *at 3. The Court further explained that the doctrine could apply based on a variety of types of legal interests, from prosecution activities, to technological development work, as well as through assignment agreements. *Rivastigmine*, 2005 WL 2319005, *at 3-4.

Accordingly, WhenU's assertion of the absence of a community of interest should be rejected by the Court.

## CONCLUSION

Based upon the foregoing, WhenU's Letter Motion to compel production of Record Numbers 1953-55 and 2049 should be denied.

Dated: September 20, 2007                              Respectfully submitted,

**DREIER LLP**

By: /s/ Arianna Frankl
    Seth H. Ostrow (SO 9605)
    Arianna Frankl (AF 7764)
    Karine Louis (KL 6652)

499 Park Avenue
New York, New York 10022
(212) 328-6100

Attorneys for Plaintiff NetRatings, Inc.

---

Other cases cited by WhenU are similarly distinguishable from the instant case. *See, e.g., Johnson Matthey, Inc. v. Research Corp.*, No. 01-CIV-8115, 2002 WL 1728566, at *7 (S.D.N.Y. July 24, 2002) (it was party to the common interest that was trying to prevent disclosure to the other party; the privilege is protected as against the rest of the world, not each of the parties to the common interest).

14

**DECLARATION OF SERVICE**

   I, Karine Louis, declare that on the 20th day of September 2007, I served a true and correct copy of the Memorandum of Law In Support of the Opposition of NetRatings, Inc. and Third-Party Inventors Steven Coffey, David Pinsley, Karen Poloniewicz, Stephen Costello and Steven Stanziani to Whenu.com, Inc's Letter Motion to Compel Production of Privileged Documents upon the following persons in the manner indicated.

*By ECF Service*:

Brian Buroker
bburoker@hunton.com

Jeff Leaning
jleaning@hunton.com

Justin T. Arbes
jarbes@hunton.com

Celia Barenholtz
cbarenholtz@cooley.com

Attorneys for WhenU.com, Inc.

   I declare under penalty of perjury that the foregoing is true and correct.

   Executed this 20th day of September 2007 at New York, New York.


                          /s/Karine Louis
                           Karine Louis


289395

15